# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 10-07936 MMM (SSx) | Date | December 15, 2010 |

| | |
|---|---|
| Title | *Hildreth v. Unilever United States, Inc.* |

Present: The Honorable    MARGARET M. MORROW

| ANEL HUERTA | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:**      Order to Show Cause Why Action Should Not Be Dismissed for Lack of Subject Matter Jurisdiction

## I. BACKGROUND

In this putative class action, plaintiffs Michelle Hildreth and Natalie Trotta ("plaintiffs") allege that defendant Unilever United States, Inc., ("Unilever") falsely represented the fat reduction content on the product labels of I Can't Believe It's Not Butter! Light ("ICB") and Country Crock Light ("Country").[1] Because the labeling did not follow FDA and California state requirements for identifying reduced-fat products, plaintiffs allege that the defendant wrongly deceived the class into purchasing the products, in violation of state law.[2] Plaintiffs are both citizens of California and purchasers of defendant's ICB and Country products.[3] Defendant Unilever is a New Jersey-based consumer products company and the manufacturer and distributor of these products.[4]

Plaintiffs define the proposed class as: "All residents of the State of California who purchased

---

[1] Complaint, Docket No. 1 (Oct. 21, 2010), ¶¶ 1-5.

[2] *Id.*, ¶ 5.

[3] *Id.*, ¶¶ 7-8.

[4] *Id.*, ¶ 9.

[Country] or [ICB] from October 21, 2006 through the present."[5] Plaintiffs assert three state law causes of action: (1) violations of the Consumers Legal Remedies Act, Cal. Civil Code § 1750, *et seq*; (2) violations of the False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq*; and (3) violations of the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq*. Plaintiffs and the proposed class seek an injunction to prevent defendant from branding the products as "Light," restitution and disgorgement, costs of suit, and attorneys' fees.[6] The complaint asserts that the court has jurisdiction under 28 U.S.C. § 1332(d) because "the aggregated claims of the individual Class members exceed the sum or value of $5,000,000 . . . and . . . the Defendant is not a citizen of the forum state."[7]

Plaintiffs allege that California law requires that "any product which derives 50% or more of its calories from fat be reduced in fat content by 50% or more" before such a product may be labeled as "light."[8] Plaintiffs allege that Unilever's ICB and Country products do not meet this requirement.[9] Specifically, plaintiffs contend that the Country product contains five grams of fat and 50 calories from fat per serving, while the regular Country Crock spread contains seven grams of fat and 60 calories from fat per serving.[10] Thus, plaintiffs argue the reduction in fat would not meet the 50% reduction requirement.[11]

As a result of these labeling violations, plaintiffs allege that defendants deceived the plaintiffs into purchasing a healthier margarine product relative to regular margarine products.[12] Plaintiffs allegedly lost money by purchasing these products on several occasions, in reliance on the product

---

[5]*Id.*, ¶ 38.

[6]*Id.* at 19.

[7]*Id.*, ¶ 10.

[8]*Id.*, ¶ 3.

[9]*Id.*

[10]*Id.*, ¶ 27. Plaintiffs also argue that the ICB Light product has five grams of fat and 45 calories versus eight grams of fat and 70 calories, per serving, for the regular ICB product. (*Id.*, ¶ 28.)

[11]Plaintiff alleges that this defect in labeling violates California's Sherman Food, Drug and Cosmetic Law, codified in Cal. Health & Safety Code § 110380, which incorporates federal labeling requirements contained in 21 C.F.R. § 101.56. *(Id.*, ¶¶ 16, 20-24.)

[12]*Id.*, ¶ 36.

labeling,[13] and that defendant was unjustly enriched as a result.[14]

## II.  DISCUSSION

### A.     Standard Governing Plaintiff's Pleading of Jurisdiction

As the party invoking federal jurisdiction, plaintiff has the burden of establishing the existence of subject matter jurisdiction.  See *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994); *In re Ford Motor Co.*, 264 F.3d 952, 957 (9th Cir. 2001); *Thompson v. McCombe*, 99 F.3d 352, 353 (9th Cir. 1996).  The rule is the same where jurisdiction is predicated on the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2).  *Abrego Abrego v. The Dow Chemical Co.*, 443 F.3d 676, 685 (9th Cir. 2006).  At the pleading stage, this burden is satisfied by alleging facts that show a proper basis for jurisdiction. FED.R.CIV.PROC. 8(a)(1) (a complaint "shall contain a short and plain statement of the grounds upon which the court's jurisdiction depends"); see *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936) ("The prerequisites to the exercise of jurisdiction are specifically defined and the plain import of the statute is that the District Court is vested with authority to inquire at any time whether these conditions have been met.  They are conditions which must be met by the party who seeks the exercise of jurisdiction in his favor.  He must allege in his pleading the facts essential to show jurisdiction").

The pleading must show "affirmatively and distinctly the existence of whatever is essential to federal jurisdiction, and if [it] does not do so, the court, on having the defect called to its attention or on discovering the same, must dismiss the case, unless the defect be corrected by amendment." *Tosco Corp. v. Communities For A Better Environment*, 236 F.3d 495, 499 (9th Cir. 2001).  Since subject matter jurisdiction must be affirmatively alleged, courts will not infer allegations supporting the exercise of jurisdiction. See *Watson v. Chessman*, 362 F.Supp.2d 1190, 1194 (S.D. Cal. 2005); see also *Tosco Corp.*, 236 F.3d at 499; *Century Southwest Cable Television, Inc. v. CIIF Assocs.*, 33 F.3d 1068, 1071 (9th Cir. 1994).

### B.     Standard Governing Diversity Jurisdiction Under the Class Action Fairness Act

CAFA vests original jurisdiction in district courts to hear civil class actions "in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs," and "in which[, *inter alia*,] any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2); see also *Luther v. Countrywide Homes Loans Servicing LP*, 533 F.3d 1031, 1033-34 (9th Cir. 2008) ("The Class Action Fairness Act of 2005 § 4(a), 28 U.S.C. § 1332(d)(2), amended the requirements for diversity jurisdiction by granting district courts original jurisdiction over class actions exceeding $5,000,000 in controversy where at least one plaintiff is

---

[13]*Id.*, ¶¶ 5, 7-8.

[14]*Id.*, ¶ 72.

diverse from at least one defendant. In other words, complete diversity is not required. CAFA was enacted, in part, to 'restore the intent of the framers of the United States Constitution by providing for Federal court consideration of interstate cases of national importance under diversity jurisdiction.' Pub.L. No. 109-2, § 2(b)(2), 119 Stat. 4, 5 (codified as a note to 28 U.S.C. § 1711)").

Under CAFA, the number of members of all proposed plaintiff classes must exceed 100 in the aggregate. 28 U.S.C. § 1332(d)(5)(B). See also *Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1020-21 (9th Cir. 2007) ("As a threshold matter, CAFA applies to 'class action' lawsuits where the aggregate number of members of all proposed plaintiff classes is 100 or more persons and where the primary defendants are not 'States, State officials, or other governmental entities against whom the district court may be foreclosed from ordering relief.' § 1332(d)(5). . . . Once the prerequisites of § 1332(d)(5) are satisfied, CAFA vests federal courts with 'original' diversity jurisdiction over class actions if (1) the aggregate amount in controversy exceeds $5,000,000, and (2) any class member is a citizen of a state different from any defendant. § 1332(d)(2)"); *id.* at 1021 n. 3 ("The Fifth Circuit characterized § 1332(d)(5) as an 'exception' to CAFA jurisdiction conferred under § 1332(d)(2). . . . We view § 1332(d)(5) somewhat differently. . . . [S]atisfaction of § 1332(d)(5) serves as a prerequisite, rather than as an exception, to jurisdiction under § 1332(d)(2). This distinction is important because, as we address later, there are 'exceptions' to the statute in which jurisdiction otherwise exists under § 1332(d)(2) but the federal courts either *may* or *must* decline to exercise that jurisdiction. See, e.g., § 1332(d)(3)-(4)").

Even if the number of members in the class exceeds 100, the district court "shall decline to exercise jurisdiction" over a class action in which (a) more than two-thirds of the class members are citizens of the state in which the action was originally filed; (b) plaintiffs seek significant relief against at least one defendant whose conduct forms a significant basis for the claims asserted by the class and who is a citizen of the state in which the action was originally filed; (c) the principal injuries were incurred in the state in which the action was originally filed; and (d) during the three-year period preceding the filing of the class action, no other class action was filed asserting the same or similar allegations against any of the defendants on behalf of the same or other persons." 28 U.S.C. § 1332(d)(4)(A).

The district court must also decline to exercise jurisdiction over a class action in which two-thirds or more of the class members, and the primary defendants, are citizens of the state in which the action was originally filed. 28 U.S.C. § 1332(d)(4)(B). Additionally, the district court may decline to exercise jurisdiction over a class action in which greater than one-third but less than two-thirds of the members of the plaintiff class and the primary defendants are citizens of the state in which the action was originally filed based on consideration of six factors.[15] 28 U.S.C.

---

[15]The six factors are: "(A) whether the claims asserted involve matters of national or interstate interest; (B) whether the claims asserted will be governed by laws of the State in which the action was originally filed or by the laws of other States; (C) whether the class action has been pleaded in a

§ 1332(d)(3).

### C. Whether Plaintiff Has Alleged Facts Showing the Necessary Diversity of Citizenship

As respects the minimal diversity requirement, the complaint alleges that plaintiffs are California citizens while defendant Unilever is a New Jersey citizen.[16] The court thus finds that plaintiff properly alleges the parties' complete diversity.

### D. Whether Plaintiff Alleged Facts Showing that the Class He Seeks to Represents is the Required Minimum Size

As respects the class size requirement, the complaint alleges only that the "Class is so numerous . . ." that the joinder of all members is impracticable.[17] The complaint does not allege that the class exceeds 100 members. Nor is it possible to discern from plaintiffs' definition of the class how large it might be.[18] Absent an allegation regarding the size of the class, plaintiffs have failed to demonstrate that this element of CAFA jurisdiction is met.

### E. Whether Plaintiff Has Adequately Alleged an Amount in Controversy That Satisfies CAFA

Plaintiff must also allege facts showing that the amount in controversy exceeds $5,000,000, exclusive of interest and costs, to establish jurisdiction under CAFA. "In measuring the amount in controversy, a court must assume that the allegations of the complaint are true and that a jury will return a verdict for the plaintiff on all claims made in the complaint." *Korn v. Polo Ralph Lauren Corp.*, 536 F.Supp.2d 1199, 1205 (E.D. Cal. 2008) (citing *Kenneth Rothschild Trust v. Morgan*

---

manner that seeks to avoid federal jurisdiction; (D) whether the action was brought in a forum with a distinct nexus with the class members, the alleged harm, or the defendants; (E) whether the number of citizens of the State in which the action was originally filed in all proposed plaintiff classes in the aggregate is substantially larger than the number of citizens from any other State, and the citizenship of the other members of the proposed class is dispersed among a substantial number of States; and (F) whether, during the 3-year period preceding the filing of that class action, 1 or more other class actions asserting the same or similar claims on behalf of the same or other persons have been filed." 28 U.S.C. § 1332(d)(3).

[16]Complaint, ¶¶ 7-9.

[17]*Id.*, ¶ 41.

[18]*Id.*, ¶ 38 ("all residents of . . . California . . . who purchased [Country] and [ICB] from October 21, 2006 through the present").

*Stanley Dean Witter*, 199 F.Supp.2d 993, 1001 (C.D. Cal. 2002)). "The ultimate inquiry is what amount is put 'in controversy' by the plaintiff's complaint, not what a defendant will *actually* owe." *Id.* (citing *Rippee v. Boston Market Corp.*, 408 F.Supp.2d 982, 986 (S.D. Cal. 2005), and *Scherer v. Equitable Life Assurance Society of the United States*, 347 F.3d 394, 399 (2d Cir. 2003) (emphasis original)).

As respects the alleged amount in controversy, plaintiffs allege only that "the aggregated claims . . . exceed the sum or value of $5,000,000"[19] and that plaintiffs purchased defendants' products "on several occasions."[20] Plaintiffs provide no specific indication of the amount of economic injury sustained individually, or by the class. This allegation does not demonstrate that the aggregate $5,000,000 amount in controversy requirement is satisfied. Nor would plaintiffs' allegations satisfy the minimum amount in controversy of $75,000 were they suing as an individuals under 28 U.S.C. § 1332(a).

From the facts alleged in the complaint, there is significant doubt as to whether the amount in controversy requirement is satisfied based on plaintiffs' purchases of ICB and Country Light during the past four years. Plaintiffs also do not allege whether their loss amount is typical of the losses incurred by all class members, nor the number of individuals in the class, or other facts that might support CAFA jurisdiction. Absent such facts, plaintiffs have not adequately pled that there is, in the aggregate, at least $5,000,000 in controversy. The court may not exercise jurisdiction under CAFA on the basis of this type of speculation. See *Lowdermilk v. U.S. Bank National Ass'n*, 479 F.3d 994, 1002 (9th Cir. 2007) ("[The court is] left . . . to speculate as to the size of the class, the amount of unpaid wages owed due to the rounding policy, and whether or not members of the class qualify for penalty wages. . . . Until the parties are able to more definitively ascertain the potential size of the class or the extent of the damages, we cannot base our jurisdiction on . . . speculation and conjecture"); *Lewis v. Verizon Commc'n, Inc.*, No. CV 10-2337 PSG (MANx), 2010 WL 2650363, *3 (C.D. Cal. June 30, 2010) ("This Court finds the reasoning of its sister courts to be persuasive: Plaintiff's claims have put in controversy an amount that is still a matter of pure speculation, which will not support jurisdiction," citing *Lowdermilk*, 479 F.3d at 1002); *Guerrero v. Mobilefunster, Inc.*, No. C 08 04389 SBA, 2009 WL 195918, *1 (N.D. Cal. Jan. 26, 2009) ("Plaintiff's claim includes charges for unauthorized services, not all amounts [defendant] has billed and collected. . . . It is impossible to tell . . . how many customers were billed for unauthorized charges, and how much they were charged. To conclude that more than $5 million is in controversy, the court would have to speculate as to the size of the class and the average amount of recovery for each class member, or simply guess at how much of [defendant's] revenue is relevant to this action. Such speculation is an insufficient basis for the assertion of subject matter jurisdiction"); cf *Munoz v. Central Parking Sys., Inc.*, No. CV 10-6172 PA (RCx), 2010 WL 3432239, *1-2 (C.D. Cal. Aug. 30, 2010) ("A court may not base its jurisdiction on speculation and conjecture. . . . In calculating the amount in controversy

---

[19]*Id.*, ¶ 10.

[20]*Id.*, ¶¶ 7-8.

Defendant relies on several unsupported assumptions. For instance, in calculating the amount on Plaintiff's claim for failure to provide accurate itemized wage statements Defendant arbitrarily assumes that a class member will be entitled to $2,550 in penalties, even though there is no evidence showing how many times class members failed to receive such statements. Additionally, in calculating the amount on Plaintiff's overtime, minimum wage, and missed meal period claims Defendant assumes that a class member worked one overtime hour per week, was not paid minimum wage one time per week, and missed one meal period per week. Similarly, Defendant's calculation on Plaintiff's claim for failure to report time pay assumes that Defendant failed to report two hours for a class member per year," citing *Lowdermilk*, 479 F.3d at 1002). Accordingly, plaintiffs have failed to meet their burden of pleading satisfaction of the CAFA amount in controversy requirement.[21]

### III.  CONCLUSION

For the foregoing reasons, the court orders plaintiff to show cause on or before **December 22, 2010**, why this action should not be dismissed for lack of subject matter jurisdiction. Failure to respond by **December 22, 2010**, will result in immediate dismissal of the action. Defendant may file a response no later than **December 29, 2010.**

---

[21]While it is proper to consider the value of an injunction to defendant in calculating the amount in controversy under CAFA, plaintiffs have failed to state what the value of the injunction they seek in this case might be. See *Ruby v. State Farm Gen. Ins. Co.*, No. C 10-02252 SI, 2010 WL 3069333, *4 & n. 4 (N.D. Cal. Aug. 4, 2010) ("While defendant is correct that . . . costs to defendant of implementing an injunction may be considered in calculating the amount in controversy, defendant has provided no basis for finding that these factors would add up to an amount sufficient to bring this case over the $5,000,000 threshold," citing *In re Ford Motor Co.*, 264 F.3d 952, 958 (9th Cir. 2001) (the cost of injunctive relief may be considered in calculating the amount in controversy under CAFA where plaintiff's recovery is below jurisdictional threshold)); *Lyon v. W.W. Grainger Inc.*, No. C 10-00884 WHA, 2010 WL 1753194, *2 (N.D. Cal. Apr. 29, 2010)  (stating, in a CAFA case, that "[t]he cost of . . .the injunction against defendant must be included when determining the amount in controversy," citing *In re Ford Motor Co.*, 264 F.3d at 958.)